## UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| **c/o United States Attorney's Office** ) | |
| **555 Fourth St., N.W.,** ) | |
| **Washington, DC 20530,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil Action No.** |
| ) | **(UNDER SEAL)** |
| **ALL FUNDS IN BANK OF CHINA LIMITED** ) | |
| **Interbank Accounts In The United States In** ) | |
| **An Amount Up To And Including The Amount** ) | |
| **Of $208,136.18, Which Is Equivalent To The** ) | |
| **Value Of Proceeds Now On Deposit In Account** ) | |
| **Number XXXXXXXXXXXXXXX7-904, Held** ) | |
| **At Bank Of China Limited, Guangdong** ) | |
| **Branch, Or Any Property Traceable Thereto,** ) | |
| ) | |
| **ALL FUNDS IN BANK OF CHINA LIMITED** ) | |
| **Interbank Accounts In The United States In** ) | |
| **An Amount Up To And Including The Amount** ) | |
| **Of $389,735.59, Which Is Equivalent To The** ) | |
| **Value Of Proceeds Now On Deposit In Account** ) | |
| **Number XXXXXXXXXXXXXXX7-831, Held** ) | |
| **At Bank Of China Limited, Guangdong** ) | |
| **Branch, Or Any Property Traceable Thereto,** ) | |
| ) | |
| **ALL FUNDS IN BANK OF CHINA LIMITED** ) | |
| **Interbank Accounts In The United States In** ) | |
| **An Amount Up To And Including The Amount** ) | |
| **Of $444,203.53, Which Is Equivalent To The** ) | |
| **Value Of Proceeds Now On Deposit In Account** ) | |
| **Number XXXXXXXXXXXXXXX4-460, Held** ) | |
| **At Bank Of China Limited, Guangdong** ) | |
| **Branch, Or Any Property Traceable Thereto,** ) | |
| ) | |
| **ALL FUNDS IN BANK OF CHINA LIMITED** ) | |
| **Interbank Accounts In The United States In** ) | |
| **An Amount Up To And Including The Amount** ) | |
| **Of $227,110.57, Which Is Equivalent To The** ) | |
| **Value Of Proceeds Now On Deposit In Account** ) | |

Number XXXXXXXXXXXXXXX7-858, Held        )
At Bank Of China Limited, Guangdong      )
Branch, Or Any Property Traceable Thereto, )
                                          )
ALL FUNDS IN BANK OF CHINA LIMITED       )
Interbank Accounts In The United States In )
An Amount Up To And Including The Amount )
Of $186,252.85, Which Is Equivalent To The )
Value Of Proceeds Now On Deposit In Account )
Number XXXXXXXXXXXXXXX5-687, Held        )
At Bank Of China Limited, Guangdong      )
Branch, Or Any Property Traceable Thereto, )
                                          )
                  Defendants.             )
_____  )

## VERIFIED COMPLAINT FOR FORFEITURE *IN REM*

*COMES NOW*, plaintiff United States of America, by and through the United States Attorney for the District of Columbia and the Department of Justice, Asset Forfeiture and Money Laundering Section and Computer Crime and Intellectual Property Section, pursuant to Title 18, United States Code, Sections 2323(a)(1)(C) and 981(k), to bring this verified complaint for forfeiture in a civil action *in rem* against funds in Bank of China Limited, Guangdong Branch, interbank accounts in the United States at covered financial institutions in an amount up to and including $1,455,438.72.

Bank of China Limited, Guangdong Branch, has interbank accounts in the United States at covered financial institutions at the New York branches of Bank of China Limited, Bank of America NA, Citibank NA, Deutsche Bank Trust Company Americas, and JPMorgan Chase Bank National Association, and this Verified Complaint For Forfeiture *In Rem* asks the Court to issue warrants of arrest *in rem* for the funds on deposit in these interbank accounts until the arrested funds are equal in value, respectively, to the amount of all funds now on deposit in the above-listed Bank of China

Limited, Guangdong Branch, account numbers up to the amounts in each account as set forth above.

Bank of China Limited, Guangdong Branch, is a foreign financial institution in the People's

Republic of China.  In support of this cause, plaintiff states as follows:

## NATURE OF ACTION AND DEFENDANT *IN REM* AND SUMMARY OF CLAIM

1.      This is a civil action *in rem* brought against the defendant property to forfeit it to the

United States, as authorized by 18 U.S.C. §§ 2323(a)(1)(C) and 981(k).  The defendant property in

this complaint for forfeiture is all funds in Bank of China Limited, Guangdong Branch, interbank

accounts in the United States at the New York branches of Bank of China Limited, Bank of America

NA, Citibank NA, Deutsche Bank Trust Company Americas, and JPMorgan Chase Bank National

Association, in an amount up to and including $1,455,438.72, which is comprised of amounts in each

account as set forth below, specifically:

(a) an amount up to and including  $208,136.18, which is equivalent to the value of
proceeds now on deposit in Bank of China Limited, Guangdong Branch, account
number XXXXXXXXXXXXXXX7-904, or any property traceable thereto;

(b) an amount up to and including $389,735.59, which is equivalent to the value of
proceeds now on deposit in Bank of China Limited, Guangdong Branch, account
number XXXXXXXXXXXXXXX7-831, or any property traceable thereto;

(c) an amount up to and including $444,203.53, which is equivalent to the value of
proceeds now on deposit in Bank of China Limited, Guangdong Branch, account
number XXXXXXXXXXXXXXX4-460, or any property traceable thereto;

(d) an amount up to and including $227,110.57, which is equivalent to the value of
proceeds now on deposit in Bank of China Limited, Guangdong Branch, account
number XXXXXXXXXXXXXXX7-858, or any property traceable thereto; and

(e) an amount up to and including $186,252.85, which is equivalent to the value of
proceeds now on deposit in Bank of China Limited, Guangdong Branch, account
number XXXXXXXXXXXXXXX5-687.

In summary, this complaint alleges the following: from on or about November 2010 to on

or about March 2012, five separate PayPal Private Ltd. ("PayPal") accounts bearing the account numbers XXXXXXXXXXXXXXX5924 (the "magicwen9999@gmail.com PayPal account"), XXXXXXXXXXXXXXX5491 (the "davidlu199@gmail.com PayPal account"), XXXXXXXXXXXXXXX4320 (the "yhsong005@gmail.com PayPal account"), XXXXXXXXXXXXXXX2532 (the "lansong10@gmail.com PayPal account"), and XXXXXXXXXXXXXXX0248 (the "zf3233@hotmail.com PayPal account") were used to process the proceeds of the sales of counterfeit professional and collegiate sports team apparel, primarily jerseys, on the Internet.   In furtherance of this scheme, individuals who ordered counterfeit professional and collegiate sports apparel from certain websites were directed to pay for their purchases using, among other methods, one of the five above-listed PayPal accounts.   Between December 14, 2010, and March 6, 2012, $1,455,438.72 in proceeds of the sales of counterfeit goods shipped to the United States and paid into the five afore-listed PayPal accounts were transferred to five bank accounts held at a foreign financial institution, Bank of China Limited, Guangdong Branch, in the People's Republic of China.   Specifically:

> (a) $208,136.18 was wired to account number XXXXXXXXXXXXXXX7-904 (the "magicwen9999@gmail.com bank account");
>
> (b) $389,735.59 was wired to account number XXXXXXXXXXXXXXX7-831 (the "davidlu199@gmail.com bank account");
>
> (c) $444,203.53 was wired to account number XXXXXXXXXXXXXXX4-460 (the "yhsong005@gmail.com bank account");
>
> (d) $227,110.57 was wired to account number XXXXXXXXXXXXXXX7-858 (the "lansong10@gmail.com bank account"); and
>
> (e) $186,252.85 was wired to account number XXXXXXXXXXXXXXX5-687 (the "zf3233@hotmail.com bank account").

In sum, a total amount of $1,455,438.72 transferred to the five Chinese bank accounts is traceable to the proceeds from the sales of counterfeit professional and collegiate sports apparel, primarily jerseys, paid into the five PayPal accounts and shipped to addresses in the United States, including addresses in the District of Columbia.

2.      Pursuant to 18 U.S.C. § 2323(a)(1)(C), property is forfeitable to the United States when it constitutes or is derived from "any proceeds obtained directly or indirectly as a result of" trafficking in counterfeit goods, in violation of 18 U.S.C. § 2320.

## JURISDICTION AND VENUE

3.      This Court has original jurisdiction of this civil action by virtue of 28 U.S.C. § 1345 because it has been commenced by the United States, and by virtue of 28 U.S.C. § 1355(a), because it is an action for the recovery and enforcement of a forfeiture under an Act of Congress.

4.      Venue is proper in this District by virtue of 28 U.S.C. § 1355(b)(1), because this is a civil forfeiture action brought in the district court for the district in which any of the acts or omissions giving rise to the forfeiture occurred.

5.      This civil action *in rem* for forfeiture is governed by 18 U.S.C. §§ 981, 983, 2320, and 2323, the Federal Rules Of Civil Procedure, and Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions.

## THE DEFENDANTS *IN REM*

6.      The defendant properties named in the Verified Complaint for Forfeiture *In Rem* are more fully described as:

**All Funds In Bank Of China Limited, Guangdong Branch, Interbank Accounts In The United States In An Amount Up To And Including The Amount Of $208,136.18, Which Is Equivalent To The Value Of Proceeds Now On Deposit**

**In Account Number XXXXXXXXXXXXXXX7-904, Held At Bank Of China, Guangdong Branch, Or Any Property Traceable Thereto;**

**All Funds In Bank Of China Limited, Guangdong Branch, Interbank Accounts In The United States In An Amount Up To And Including The Amount Of $389,735.59, Which Is Equivalent To The Value Of Proceeds Now On Deposit In Account Number XXXXXXXXXXXXXXX7-831, Held At Bank Of China, Guangdong Branch, Or Any Property Traceable Thereto;**

**All Funds In Bank Of China Limited, Guangdong Branch, Interbank Accounts In The United States In An Amount Up To And Including The Amount Of $444,203.53, Which Is Equivalent To The Value Of Proceeds Now On Deposit In Account Number XXXXXXXXXXXXXXX4-460, Held At Bank Of China, Guangdong Branch, Or Any Property Traceable Thereto;**

**All Funds In Bank Of China Limited, Guangdong Branch, Interbank Accounts In The United States In An Amount Up To And Including The Amount Of $227,110.57, Which Is Equivalent To The Value Of Proceeds Now On Deposit In Account Number XXXXXXXXXXXXXXX7-858, Held At Bank Of China, Guangdong Branch, Or Any Property Traceable Thereto; and**

**All Funds In Bank Of China Limited, Guangdong Branch, Interbank Accounts In The United States In An Amount Up To And Including The Amount Of $186,252.85, Which Is Equivalent To The Value Of Proceeds Now On Deposit In Account Number XXXXXXXXXXXXXXX5-687, Held At Bank Of China, Guangdong Branch, Or Any Property Traceable Thereto.**

7.     Title 18, United States Code, Section 981(k) **Interbank accounts**, states:

[981(k)(1)(A)] **In general.** – For the purpose of a forfeiture under this section . . . , if funds are deposited into an account at a foreign financial institution (as defined in section 984(c)(2)(A) of this title) and that foreign financial institution (as defined in section 984(c)(2)(A) of this title) has an interbank account in the United States with a covered financial institution (as defined in section 5318(j)(1) of title 31) the funds shall be deemed to have been deposited into the interbank account in the United States, and any restraining order, seizure warrant, or arrest warrant *in rem* regarding the funds may be served on the covered financial institution, and funds in the interbank account, up to the value of the funds deposited into the account at the foreign financial institution.

. . .

[981(k)(2)] **No requirement for Government to trace funds.** – If a forfeiture action is brought against funds that are restrained, seized, or arrested under paragraph (1), it shall not be necessary for the Government to establish that the funds are directly traceable to the funds that were deposited into the foreign financial institution (as defined in section 984(c)(2)(A) of this title), nor shall it be necessary for the Government to rely on application of section 984.

8.      Bank of China Limited, Guangdong Branch, is a "covered financial institution" for purposes of Title 18, United States Code, Section 981(k).

9.      Bank of China Limited**,** Guangdong Branch, maintains interbank accounts in the United States at Bank of China Limited, New York Branch, Bank of America NA, Citibank NA, Deutsche Bank Trust Company Americas, and JPMorgan Chase Bank National Association.

## BACKGROUND

### Internet-Related Definitions

10.     A "domain name" or "Internet domain name" describes an addressing construct used to identify and locate computers on the Internet.  Domain names provide a system of Internet addresses that can be translated into the numeric addresses (Internet protocol ("IP") numbers) used by the Internet.

11.     A "domain name server" ("DNS server") is a computer connected to the Internet that converts, or resolves, domain names into IP addresses.  For each top-level domain (such as ".gov"), there is a single company, called a "registry," that determines which second-level domain (such as justice.gov) resolves to which IP address.

12.     An "IP address" is a unique numeric address used by computers on the Internet.  An IP address is a series of four numbers, each in the range 0–255, separated by periods (*e.g.*, 12.56.97.178).  Every computer attached to the Internet must be assigned an IP address so that

Internet traffic sent from and directed to that computer may be directed properly from its source to its destination.

13.     The assignment of IP addresses to computers connected to the Internet is controlled by Internet Service Providers ("ISP").

14.     A "registrar," among other things, processes registrations for domain names and sends the necessary DNS server information for each registered domain name to a registry for entry into a centralized registry database.

15.     A "registrant" is the individual or organization that registers a specific domain name with the registrar.  The registrant is the legal entity that holds the right to use that specific domain name for a determined time period within the parameters of a domain name registration agreement entered into by the registrant and the registrar.

16.     A "host" is a computer that has both the software and the data to resolve a domain name to an IP address.  An entity that hosts a website associated with a domain name provides the equipment and services required to host and maintain files for a website and to provide rapid Internet connections to that website.  Most hosting is "shared," which means that multiple websites of unrelated registrants are on the same server in order to reduce associated costs.

17.     A "website" consists of textual pages of information and associated graphic images. The textual information is stored in a specific format known as Hyper-Text Markup Language ("HTML") and is transmitted from the web servers to various web users via Hyper-Text Transport Protocol ("HTTP").

**Unlawful Sale of Counterfeit Goods**

18.     A trademark is any word, name, symbol, device, or any combination, used or intended

-8-

to be used, in commerce to identify and distinguish the goods of one manufacturer or seller from goods manufactured or sold by others and indicates the source of the goods.  Trademarks are registered with the United States Patent and Trademark Office ("USPTO").

19.     Under Title 18, United States Code, Section 2320(e), a "counterfeit" trademark is a spurious or unauthorized mark that is used in connection with trafficking goods, that is identical to or substantially indistinguishable from a mark registered with the USPTO for use on the type of goods being trafficked, and that is likely to cause confusion or mistake.

20.     Title 18, United States Code, Section 2320(a) provides:

Whoever; intentionally traffics or attempts to traffic in goods or services and knowingly uses a counterfeit mark on or in connection with such goods or services, or intentionally traffics or attempts to traffic in labels, patches, stickers, wrappers, badges, emblems, medallions, charms, boxes, containers, cans, cases, hangtags, documentation, or packaging of any type or nature, knowing that a counterfeit mark has been applied thereto, the use of which is likely to cause confusion, to cause mistake, or to deceive, shall, if an individual, be fined not more than $2,000,000 or imprisoned not more than 10 years, or both, and, if a person other than an individual, be fined not more than $5,000,000.

## STATEMENT OF FACTS

21.     Professional and collegiate sports leagues in the United States and Canada, including but not limited to the National Football League ("NFL"), Major League Baseball ("MLB"), the National Basketball Association ("NBA"), and the National Hockey League ("NHL"), and individual teams within these leagues, hold registered trademarks that appear on their respective sports teams' jerseys, other team apparel, and the hangtags and packaging affixed to their authorized merchandise.

22.     The professional sports leagues and the Collegiate Licensing Company ("CLC") authorize vendors to distribute genuine jerseys and other merchandise on their behalf.

**The Sale of Counterfeit Sports Apparel Through the
Precursor Websites www.borntrade.com and www.borntrade.net**

23.     In or about September 2010, the National Intellectual Property Rights Coordination Center ("IPR Center") received a request for an investigation of individuals associated with the operation of the domain name www.borntrade.com because the Coalition to Advance the Protection of Sports Logos ("CAPS") had received complaints that the website www.borntrade.com was being used to facilitate the sale of counterfeit consumer goods, namely, professional and collegiate sports team apparel bearing counterfeit trademarks.

24.     The website www.borntrade.com is related to the domain name www.borntrade.net. After accessing the website www.borntrade.com, the user was directed to enter www.borntrade.net by clicking on a hyperlink or by clicking anywhere on the top half of the www.borntrade.com website.  The www.borntrade.net website displayed for sale numerous NFL, NHL, NBA, and MLB trademarked sports apparel.

25.     The websites www.borntrade.com and www.borntrade.net are not authorized distributors of genuine merchandise on behalf of the NFL, NHL, NBA, MLB, or the CLC.

26.     As part of that investigation, in or about October 2010, special agents ("SAs") accessed the www.borntrade.com and www.borntrade.net websites and followed the directions to place an order for what appeared to be trademarked sports team apparel.  The SAs placed two such under-cover orders for what appeared to be sports team apparel bearing registered trademarks.

27.     Shortly after placing the first order, which was for an NFL Washington Redskins (#5 McNabb) jersey and an MLB Washington Nationals (#37 Strasburg) jersey, the SAs received an email from the email address service.born@gmail.com providing shipping information for the order.

28.     Shortly after placing the second order, which was for an NFL New England Patriots (#12 Brady) jersey and an MLB Boston Red Sox (#20 Youklis) jersey, the SAs received an email from the email address qian307@gmail.com, signed by "steven chen" from "borntrade."  The email also referenced a second contact email address, borntrade.steven@gmail.com.

29.     On October 26, 2010, the SAs received packages from the individuals operating www.borntrade.com and www.borntrade.net containing the ordered jerseys.

30.     All of the jerseys received were determined to be counterfeit sports team apparel.

31.     On or about November 24, 2010, in coordination with the IPR Center, Immigration and Customs Enforcement ("ICE"), Homeland Security Investigations ("HSI"), seized the domain names www.borntrade.com and www.borntrade.net based on a seizure warrant issued by the United States District Court for the District of Columbia.

**The Continued Sale of Counterfeit Sports Apparel Under the Borntrade Name on Successor Websites www.borntradejersey.com and www.borntradejerseys.com**

32.     Soon after the November 24, 2010 HSI seizure of the domain names www.borntrade.com and www.borntrade.net, HSI agents discovered that the websites were operating under two additional domain names, www.borntradejersey.com and www.borntradejerseys.com. The domain name www.borntradejersey.com was established on November 25, 2010, and the domain name www.borntradejerseys.com was established on November 27, 2010.  The layout, design, and text of the two new websites were virtually identical to the websites seized on November 24, 2010; only the domain names had changed.

33.     The websites www.borntradejersey.com and www.borntradejerseys.com sell (and have sold) only sports apparel that purports to be from various professional and collegiate sports

leagues in the United States and Canada, including but not limited to the MLB, NFL, NBA, and the NHL.

34.     The websites www.borntradejersey.com and www.borntradejerseys.com are not authorized distributors of genuine jerseys and other merchandise on behalf of the MLB, NFL, NBA, NHL, or the CLC.

35.     The websites www.borntradejersey.com and www.borntradejerseys.com are virtually identical.  The following identical text appears at the bottom of the home pages of both websites:

> Copyright 2011 Borntrade.  All Rights Reserved.
>
> Borntrade has a huge inventory of Football Jerseys, Baseball Jerseys, Hockey Jerseys at fantastic prices.  All logo,number and lettering are sewn on all of our products [*sic*].  Borntrade is quickly becoming the Shop where real fanatics gets their fan gear. If you're looking for Club Teams you have come to the right store.  We value your business and strive to offer high quality products.

36.     Both websites also have a message to customers warning of copycat websites: "Recently we have received complaints from some of our customers.  They ordered products on websites similar to borntradejersey . . . .   This had a very bad influence on our company borntradejersey . [*sic*]  We are here to announce that our websites are www.borntradejersey.com andwww.borntradejerseys.com [*sic*].  Websites other than that are fake ones."  The web pages displaying this identical text on both websites also directed customers to "[o]ur Facebook . . . borntrade steven" and "our Twitte[r] . . . steven chen."  The same typographical errors and misspellings appear on both websites

37.     Both websites also list similar contact information and direct customer inquiries to "Steven" at borntrade.steven@gmail.com.   In addition to directing inquiries to "Steven," www.borntradejersey.com also directs customer inquiries to "service" at service.born@gmail.com,

and www.borntradejerseys.com also directs customer inquiries to "Mike" at mike.borntradejerseys@gmail.com.

38.      As of June 9, 2011, the registrant of the domain names www.borntradejersey.com and www.borntradejerseys.com was Chen Xuewu, and the registrant's listed email address was chenxuewu@gmail.com.  The street address listed for the registrant of www.borntradejersey.com was Shanghai Shanghishiqu, Shanghaishiqu, SH 200021, China, and the street address listed for the registrant of www.borntradejerseys.com was Guangzhou Liwan Road Jiangnan #10, Guangzhou, Guangdong, 562000 China.

39.      The registration information for the domain name www.borntradejerseys.com was updated in July 2011.  The listed registrant, as of April 17, 2012, was Whois Agent of Domain Whois Protection Service, and the listed registrant email address was 290615769312@whoisprivacyprotectionservices.com.

40.      Upon information and belief, the Whois Agent registrant of www.borntradejerseys.com is a "shield" for the identity of the actual registrant so that the identifying information of the actual registrant is not publicly accessible.

41.      The registrant information for the domain name www.borntradejersey.com has not changed and remains Chen Xuewu in Shanghaishiqu, China.

42.      The registrar of the domain name www.borntradejersey.com and the domain name www.borntradejerseys.com is HiChina Zhicheng Technology Ltd., which is located in Beijing, China.

43.      The domain name www.borntradejersey.com is hosted on a computer assigned IP address 95.211.37.217, which is owned by Leaseweb B.v, located in Amsterdam in the Netherlands.

44.     The domain name www.borntradejersey.com was formerly hosted on a computer assigned IP address 173.201.105.216, which is owned by the hosting company GoDaddy.com Inc., 14455 N. Hayden Rd., Suite 219, Scottsdale, Arizona 85260.

45.     The domain name www.borntradejerseys.com is hosted on a computer assigned IP address 112.125.36.55, which is owned by a hosting company, HiChina Web Solutions (Beijing) Limited, located in Guangdong, China.

**Payments for Counterfeit Sports Apparel on the Websites www.borntradejersey.com and www.borntradejerseys.com Made to Five PayPal Accounts**

46.     The IPR Center conducted an under-cover operation to determine whether the websites www.borntradejersey.com and www.borntradejerseys.com were illegally selling counterfeit products.

**First Purchase: Email References Making Payment for Order to the magicwen9999@gmail.com PayPal Account**

47.     On June 3, 2011, an SA accessed the www.borntradejersey.com website and followed the directions to place an order for an MLB New York Yankees (#2 Jeter) jersey and an NBA Miami Heat (#6 James) jersey.  The SA added these items to his cart and proceeded to checkout.  The web page displayed the shopping cart that contained the items that the SA had selected and the corresponding prices for each item. The SA continued through the checkout process by inputting all of the billing and shipping details, including an email address that he had established earlier.  Upon completion, the SA received an order number of 1163105853.

48.     On June 3, 2011, the SA made payment of $72.00 using an online credit card payment processor.

49.     On June 3, 2011, the SA received an email from borntrade.steven@gmail.com

confirming the order and directing the SA to a PayPal account in the name of magicwen9999@gmail.com. Because the SA already had made payment for the order using another payment service, he did not make payment to the magicwen9999@gmail.com PayPal account.

50.     On June 7, 2011, the SA received another email from borntrade.service@gmail.com verifying the SA's payment and providing tracking information.

51.     On June 9, 2011, the SA received an email from service@borncustomerservice.com, which stated "here is borntradejersey company from China" and providing further tracking information.   The email contained a signature directing customer service inquiries to "service.born@gamil.com [*sic*]" and "service.borntrade@gmail.com" and stating that "if there is anything you want to know more just login to our company webiste www.borntradejersey.com [and] www.borntradejerseys.com [*sic*]."

52.     On June 9, 2011, the SA retrieved a package from the under-cover post office box in the District of Columbia, which contained the jerseys ordered from www.borntradejersey.com on June 3, 2011.

**Second Purchase: Payment for Counterfeit Jerseys Made to**
**the davidlu99@gmail.com PayPal Account**

53.     On July 8, 2011, the same SA placed an order with the www.borntradejerseys.com website.  This time, the SA placed an order for an NFL New York Giants (#10 Manning) jersey and an NFL New York Giants (#56 Taylor) jersey.  The SA followed the same procedure as he had on June 3, 2011, when purchasing these two jerseys.  Upon completion, the SA received an order number of 117922618.

54.     On July 8, 2011, the SA received an email from "steven" at borntrade.steven@gmail.com providing an invoice for the order placed on July 8, 2011, and directing

the SA to make payment using a PayPal account in the name of davidlu199@gmail.com.  The email directed customer service inquiries to borntrade.steven@gmail.com and identified an associated Facebook account in the name of "borntrade steven" and an associated Twitter account in the name of "steven chen."

55.     On July 22, 2011, the SA made payment of $80 to the davidlu199@gmail.com PayPal account for the order placed on July 8, 2011.

56.     On   July   23,   2011,   the   SA   received   an   email   from service@borntradecustomerservice.com, which provided tracking information and was in all material respects identical to the email from service@borntradecustomerservice.com received by the SA in conjunction with the June 3, 2011 order from www.borntradejersey.com.  Both emails contained the same signature block, including identical misspellings and typographical errors.

57.     On August 3, 2011, the SA retrieved a package from the under-cover post office box in the District of Columbia, which contained the jerseys ordered from www.borntradejerseys.com on July 8, 2011.

### Third Purchase: Payment for Counterfeit Jerseys Made to the yhsong005@gmail.com PayPal Account

58.     On August 31, 2011, the same SA placed an order with the www.borntradejersey.com website.  This time, the SA placed an order for an MLB Baltimore Orioles (#8 Ripken) jersey and an NHL New York Rangers (#30 Lundqvist) jersey.  The SA followed the same procedure as he had on June 3, 2011, when purchasing these two jerseys.  However, upon attempting to complete the transaction, the SA received an error message and was unable to complete the order.  The SA emailed "Steven" at borntrade.steven@gmail.com to complete the order.

59.     On September 1, 2011, the SA received an email from "steven" at borntrade.steven@gmail.com confirming the order placed on August 31, 2011, and directing the SA to make payment using a PayPal account in the name of yhsong005@gmail.com.

60.     On September 6, 2011, the SA made payment of $90 to the yhsong005@gmail.com PayPal account for the order placed on August 31, 2011.

61.     On September 9, 2011, the SA received an email from borntrade.steven@gmail.com, which acknowledged the SA's payment to the yhsong005@gmail.com PayPal account.

62.     On September 15, 2011, the SA retrieved a package from the under-cover post office box in the District of Columbia, which contained the jerseys ordered from www.borntradejersey.com on August 31, 2011.

63.     On or about September 26, 2011, a CAPS brand protection representative examined detailed digital photos of the six jerseys received from www.borntradejersey.com and www.borntradejerseys.com, discussed above, with the purported registered trademarks from the New York Yankees (an MLB team), the New York Giants (an NFL team), the Baltimore Orioles (an MLB team), the New York Rangers (an NHL team), and the Miami Heat (an NBA team).  The representative was trained and employed by Trademark Management, a company certified by numerous trademark holders, including the MLB, NFL, NHL, and the NBA, to identify counterfeit merchandise.

64.     The representative informed HSI agents that the six sports jerseys received from www.borntradejersey.com and www.borntradejerseys.com and paid for using the credit card processing service and the PayPal accounts of davidlu199@gmail.com and yhsong005@gmail.com were counterfeit and were not manufactured by the rights holders or their designee.

**Fourth Purchase: Payment for Counterfeit Jerseys Made to
the magicwen9999@gmail.com PayPal Account**

65.     On September 27, 2011, the same SA placed an order with the www.borntradejersey.com website.  This time, the SA placed an order for an NFL Pittsburgh Steelers (#7 Roethlisberger) jersey and an NHL Pittsburgh Penguins (#66 Lemieux) jersey.  The SA followed the same procedure as he had on June 3, 2011, when purchasing these two jerseys. However, the SA received an error message and was unable to complete the order.

66.     On September 27, 2011, the SA made payment of $95 to the magicwen9999@gmail.com PayPal account, which was the PayPal account referenced in the confirmation email that the SA received after placing the June 3, 2011 order on www.borntradejersey.com.

67.     On September 27, 2011, the SA emailed "Steven" at borntrade.steven@gmail.com to notify him of the incomplete order of the Roethlisberger and Lemieux jerseys and the error message.  The SA informed "Steven" that payment would be made via PayPal.  "Steven" replied to the SA's email message and asked for the order number.  The SA informed "Steven" that no order number had been provided and that he had made payment of $95 to the magicwen9999@gmail.com PayPal account.  On October 4, 2011, using the email address borntrade.steven@gmail.com, "Steven" replied to the SAs message with "ok, got it."  Upon information and belief, "it" refers to the payment of $95.

68.     On October 25, 2011, the SA retrieved a package from the under-cover post office box in the District of Columbia, which contained the Roethlisberger jersey ordered from www.borntradejersey.com on September 27, 2011.  However, the package did not contain the Lemieux jersey ordered at the same time.

-18-

69.     On November 2, 2011, the SA emailed "Steven" at borntrade.steven@gmail.com and informed him that the Lemieux jersey had not arrived in the shipment.  On the same day, "Steven" replied and stated that he "will re-send this penguins jersey to you tomorrow [*sic*]."

70.     On, November 14, 2011, the SA retrieved a package from the under-cover post office box in the District of Columbia, which contained the Lemieux jersey originally ordered from www.borntradejersey.com on September 27, 2011.

71.     On or about November 16, 2011, a CAPS brand protection representative examined detailed digital photos of the two jerseys received from www.borntradejersey.com with the purported registered trademarks from the Pittsburgh Steelers (an NFL team) and the Pittsburgh Penguins (an NHL team).  The representative was trained and employed by Trademark Management, a company certified by numerous trademark holders, including the NFL and NHL, to identify counterfeit merchandise.

72.     The representative informed HSI agents that the two sports jerseys received from www.borntradejersey.com and paid for using the magicwen9999@gmail.com PayPal accounts were counterfeit and were not manufactured by the rights holders or their designee.

### Fifth Purchase: Payment for Counterfeit Apparel Made to the zf3233@hotmail.com PayPal Account

73.     On December 28, 2011, a second SA placed an order with the www.borntradejerseys.com website.  This time, the SA placed an order for a children's sized NFL Pittsburgh Steelers (#7 Roethlisberger) jersey and an NFL Pittsburgh Steelers "black cotton adjustable cap."

74.     On December 28, 2011, the SA received an email from "C.H. Qian" from the email address qian307@gmail.com confirming the order and directing the SA to make payment to a PayPal

account in the name of zf3233@hotmail.com.  The email was signed by "steven chen" and stated that "[i]f you have any questions about your order please contact . . . borntrade.steven@gmail.com."

75.     The other SAs who had placed the under-cover orders on the predecessor websites www.borntrade.com and www.borntrade.net in 2010 also had received a confirmation email from the email address qian307@gmail.com.  In the 2010 email from qian307@gmail.com, the email was signed by "steven chen" from "borntrade."  The name "steven chen" is also the name of the Twitter account associated with the websites www.borntradejersey.com and www.borntradejerseys.com.

76.     On December 28, 2011, the SA made payment of $62 to the zf3233@hotmail.com PayPal account for the order placed on December 28, 2011.

77.     As was the case following payment for the previous two under-cover orders completed on www.borntradejersey.com and www.borntradejerseys.com without error messages, the SAs subsequently received an email from service@borntradecustomerservice.com on December 29, 2011 providing tracking information.

78.     On January 6, 2012, the SA retrieved a package from an under-cover post office box in Maryland, which contained the sports apparel ordered from www.borntradejerseys.com on December 28, 2011.

79.     On or about January 13, 2012, a private investigator examined detailed digital photos of the jersey and cap received from www.borntradejerseys.com with the purported registered trademarks from the Pittsburgh Steelers (an NFL team).  The private investigator was trained and employed by Blazer Investigations, a company certified by numerous trademark holders, including the NFL, to identify counterfeit merchandise.

80. The private investigator informed HSI agents that the sports jerseys and cap received from www.borntradejerseys.com and paid for using the zf3233@hotmail.com PayPal account were counterfeit and were not manufactured by the rights holders or their designee.

81. In summary, SAs placed five under-cover orders from the websites www.borntradejersey.com and www.borntradejerseys.com. The SAs made payments for four of those orders to four separate PayPal accounts, those of davidlu199@gmail.com (July 8, 2011 order), yhsong005@gmail.com (August 31, 2011 order), magicwen9999@gmail.com (September 27, 2011 order), and zf3233@hotmail.com (December 28, 2011 order).

82. In placing those five under-cover orders, the SAs corresponded with "steven," identified alternatively as "borntrade steven" and "steven chen" using a variety of email addresses. The following chart summarizes the information associated with each of the SAs' under-cover purchases:

| 2011 Date | Domain Name Used to Place Order | PayPal Account Paid into by SAs | Email Address(es) Contacting SAs |
|---|---|---|---|
| 6/3 | borntradejersey.com | None (however, email identified PayPal account of magicwen9999@gmail.com) | borntrade.steven@gmail.com<br>borntrade.service@gmail.com<br>service@borncustomerservice.com<br><br>Emails contained references to: "service.born@gamil.com [*sic*]," "service.borntrade@gmail.com" |
| 7/8 | borntradejerseys.com | davidlu199@gmail.com | borntrade.steven@gmail.com<br>service@borncustomerservice.com<br><br>Emails contained references to: "service.born@gamil.com [*sic*]," "service.borntrade@gmail.com" |
| 8/31 | borntradejersey.com | yhsong005@gmail.com | borntrade.steven@gmail.com |
| 9/27 | borntradejersey.com | magicwen9999@gmail.com | borntrade.steven@gmail.com |

| 12/28 | borntradejerseys.com | zf3233@hotmail.com | cqian307@gmail.com<br>service@borncustomerservice.com<br><br>Emails contained reference to:<br>borntrade.steven@gmail.com |
|-------|----------------------|--------------------|--------|

### **The Five PayPal Accounts Used to Process Payments for Counterfeit Sports Apparel**

83.     PayPal is an Internet money transfer business that enables users to establish an account, similar to a bank account.  PayPal permits money payments to be made, received, and stored in a user's account via the Internet.  In this way, among other things, PayPal permits users who have a PayPal account to receive payments into the user's account (for example, for purchases made from the users) via the Internet.  A user receiving payments into his PayPal account may then direct PayPal to disburse the funds from the user's account in one of several ways, including in the form of a check from PayPal, a transfer of funds to a PayPal deposit account, or a wire of funds to a user-designated bank account.

84.     The PayPal registration information for account number XXXXXXXXXXXXXXX5924 (defined in paragraph 1 as the "magicwen9999@gmail.com PayPal account") lists magicwen9999@gmail.com as the only contact email address.

85.     The first transaction recorded in the magicwen9999@gmail.com PayPal account took place on or about December 7, 2010, and the last completed transaction was recorded on or about November 3, 2011.

86.     On or about November 2, 2011, PayPal placed the magicwen9999@gmail.com PayPal account on restricted status, freezing the funds for 180 days, because a customer filed a complaint alleging that goods offered for sale or sold on the website www.borntradejersey.com were counterfeit.

87.     As of November 3, 2011, the magicwen9999@gmail.com PayPal account held $13,456.58.

88.     The PayPal registration information for account number XXXXXXXXXXXXXXXX5491 (defined in paragraph 1 as the "davidlu199@gmail.com PayPal account") lists davidlu199@gmail.com as the only contact email address.

89.     The first transaction recorded in the davidlu199@gmail.com PayPal account took place on or about December 19, 2010, and the last completed transaction was recorded on or about November 29, 2011.

90.     On or about November 28, 2011, PayPal placed the davidlu199@gmail.com PayPal account on restricted status, freezing the funds for 180 days, because a customer filed a complaint alleging that goods offered for sale or sold on the website www.borntradejerseys.com were counterfeit.

91.     As of November 3, 2011, the davidlu199@gmail.com PayPal account held $23,696.16.

92.     The PayPal registration information for account number XXXXXXXXXXXXXXXX4320 (defined in paragraph 1 as the "yhsong005@gmail.com PayPal account") lists yhsong005@gmail.com as the only contact email address.

93.     The first transaction recorded in the yhsong005@gmail.com PayPal account took place on or about November 30, 2010, and the last completed transaction was recorded on or about November 23, 2011.

94.     On or about November 22, 2011, PayPal placed the yhsong005@gmail.com PayPal account on restricted status, freezing the funds for 180 days, because a customer filed a complaint alleging that jerseys offered for sale or sold were counterfeit.

95.     As of November 23, 2011, the yhsong005@gmail.com PayPal account held $22,393.24.

96.     The PayPal registration information for account number XXXXXXXXXXXXXXX0248 (defined in paragraph 1 as the "zf3233@hotmail.com PayPal account") lists zf3233@hotmail.com as the only contact email address.

97.     The first transaction recorded in the zf3233@hotmail.com PayPal account took place on or about November 26, 2011, and the last completed transaction was recorded on or about March 9, 2012.

98.     Consequently, the zf3233@hotmail.com PayPal account began receiving payments shortly after PayPal restricted the magicwen9999@gmail.com, davidlu199@gmail.com, and yhsong005@gmail.com PayPal accounts.

99.     Upon information and belief, the account holder of the previously restricted PayPal accounts began using the zf3233@hotmail.com PayPal account to process payments for counterfeit sports apparel sold on the Internet in place of the previously restricted PayPal accounts that were no longer available for that purpose.

100.    On or about March 8, 2012, PayPal placed the zf3233@hotmail.com PayPal account on restricted status, freezing the funds for 180 days, because the account holder violated PayPal's Acceptable Use Policy.

101.    As of March 9, 2012, the zf3233@hotmail.com PayPal account held $12,845.58. However, the account holder refunded the payments of customers who had recently paid into the account.  As of April 12, 2012, the zf3233@hotmail.com PayPal account held $80.92.

102.    The holders of the abovementioned four PayPal accounts, into which SAs made payment while making under-cover purchases of counterfeit sports apparel from www.borntradejersey.com and www.borntradejerseys.com, also control a fifth PayPal account in the name of lansong10@gmail.com.

103.    The PayPal registration information for account number XXXXXXXXXXXXXXX2532 (defined in paragraph 1 as the "lansong10@gmail.com PayPal account") lists lansong10@gmail.com as the only contact email address.

104.    The first transaction recorded in the lansong10@gmail.com PayPal account took place on or about December 7, 2010, and the last completed transaction was recorded on or about November 15, 2011.  This period of activity is similar to that of the magicwen9999@gmail.com, davidlu199@gmail.com, and yhsong005@gmail.com PayPal accounts.

105.    Upon information and belief, the lansong10@gmail.com PayPal account processes payments made by customers who purchased counterfeit sports apparel on the www.borntradejersey.com and www.borntradejerseys.com websites.

106.    On certain occasions, the user of the various PayPal accounts accessed the lansong10@gmail.com PayPal account immediately after accessing one or more of the related PayPal accounts.  Specifically, the davidlu199@gmail.com account was accessed from a certain computer on October 13, 2011, at 05:55:41 MDT, and the lansong10@gmail.com account was accessed from the same computer minutes later, at 06:04:09 MDT.  Similarly, the

yhsong005@gmail.com account was accessed from a certain computer on December 16, 2011, at 06:47:33 MST, the davidlu199@gmail.com account was also accessed from the same computer on the same day at 06:50:56 MST, and the lansong10@gmail.com account was accessed from the same computer on the same day at 06:53:50 MST.  The December 16, 2011 logins took place after PayPal had placed the accounts in a restricted status.

107.    In general, however, the PayPal login information for the five accounts did not reflect such sequential logins from the same IP address on a regular basis.  Instead, the PayPal login information showed that, on repeated occasions, the PayPal accounts were accessed sequentially within a short period of time, but from different IP addresses.  Upon information and belief, this is likely because PayPal account holders engaged in illegal activity are or become aware that PayPal "links" or "associates" accounts based upon access to different PayPal accounts from the same IP address.  Therefore, to disguise this relationship, holders of multiple PayPal accounts will access related PayPal accounts from different IP addresses.  This can be accomplished, for example, by using different computers at different locations to login to the accounts sequentially.

108.    The PayPal records of the lansong10@gmail.com PayPal account contain similar information as do the PayPal records of the four PayPal accounts into which the SAs made under-cover payments.  For example, the PayPal records of completed transactions in the lansong10@gmail.com PayPal account include one reference to "borntradejersey.com" and sixteen references to "Steven."

109.    On or about November 14, 2011, PayPal placed the lansong10@gmail.com PayPal account on restricted status, freezing the funds for 180 days, because a customer filed a complaint

alleging that goods offered for sale or sold were counterfeit. This is the same month in which three of the other PayPal accounts were restricted by PayPal for suspected sales of counterfeit goods.

110.     As of November 15, 2011, the lansong10@gmail.com PayPal account held $20,663.52.

### Use of the Five PayPal Accounts to Process the Proceeds of Counterfeit Sales

111.     Upon information and belief, the PayPal accounts of magicwen9999@gmail.com, davidlu199@gmail.com, yhsong005@gmail.com, lansong10@gmail.com, and zf3233@hotmail.com (collectively, "the five PayPal accounts") were used for the exclusive purpose of processing the proceeds of sales counterfeit sports apparel.

112.     In the periods in which the five PayPal accounts were active, collectively, there were 6,439 completed transactions that listed shipping addresses in the United States, including shipping addresses in the District of Columbia. These transactions constituted 94.6% of the total number of completed transactions recorded in the records of the five PayPal accounts.

113.     Of the 6,439 completed transactions listing a United States shipping address, virtually all of them listed a similarly styled order number in the "subject" field of the PayPal records for each completed transaction. The order numbers received by the SAs when making under-cover purchases were of the same style. The "subject" field is an optional text field that the user making a payment into the PayPal account populates while completing the transaction.

114.     PayPal records for several of the transactions completed in the yhsong005@gmail.com and lansong10@gmail.com PayPal accounts prefaced the order number in the "subject" field with "invoice from Steven" or "invoice for order." Such reference to "Steven" occurred in the "subject" fields of 69 transactions in the yhsong005@gmail.com PayPal account and

of 15 transactions in the lansong10@gmail.com PayPal account.  In the "subject" field of one transaction recorded in the lansong10@gmail.com PayPal account, the order number was prefaced with "borntradejersey.com order #."

115.    Upon information and belief, the references to "Steven" refer to the "Steven" associated with the websites www.borntradejersey.com and www.borntradejerseys.com.  "Steven" signed most of the emails sent to SAs while completing their under-cover purchases from and was listed as a customer service contact on both of those websites.  Additionally "borntrade steven" and "steven chen" are the Facebook and Twitter accounts, respectively, associated with www.borntradejersey.com and www.borntradejerseys.com.

116.    Messages and queries from customers directed to "Steven" also appeared in the optional "note" field of the PayPal records of completed transactions in the five PayPal accounts.

117.    The majority of the users entered no text in the optional "note" field when making payments to the five PayPal accounts.  Collectively, 130 (or 2.01%) of the 6,439 completed transactions listing a United States address contained any text in the optional "note" field.

118.    Of the completed transactions listing a United States shipping address, 1.41% of those listed in the magicwen9999@gmail.com PayPal account contained text in the optional "note" field, 1.9% of those listed in the davidlu199@gmail.com PayPal account contained text in the optional "note" field, 3.53% of those listed in the yhsong005@gmail.com PayPal account contained text in the optional "note" field, 2.16% of those listed in the lansong10@gmail.com PayPal account contained text in the optional "note" field, and 0.61% of those listed in the zf3233@hotmail.com PayPal account contained text in the optional "note" field.

119.    Of the 130 completed transactions containing text in the "note" field, 55 (or 42.31%) contained references to "Steven," and/or "borntrade," and/or "jersey," "jerseys," or a sports team or player.

120.    More specifically, the PayPal records revealed the following:

| PayPal Account | Total Completed Transactions (with U.S. shipping address) | Transactions Containing Text in "Note" Field | "Note" Field Referenced "Steven" and/or "borntrade" and/or "Jersey," "Jerseys," or a Professional Sports Team or Player |
|---|---|---|---|
| magicwen9999@gmail.com | 923 | 14 (1.41%) | 7  (50% of transactions containing text in "note" field) |
| davidlu199@gmail.com | 1,936 | 37 (1.9%) | 13 (35%) |
| yhsong005@gmail.com | 1,415 | 50 (3.53%) | 27 (54%) |
| lansong10@gmail.com | 1,018 | 22 (2.16%) | 8 (36.36%) |
| zf3233@hotmail.com | 1,147 | 7 (0.61%) | 0 (0%) |
| *Total* | *6,439* | *130 (2.01%)* | *55 (42.31%)* |

121.    Virtually none of the remaining transactions provided any indication in the optional "subject" or "note" field as to the substance of the transaction or reason for the payment.

122.    There were no instances in which the optional "subject" or "note" field indicated that the substance or reason for the transaction was inconsistent with the purchase of counterfeit sports apparel.

123.    On the websites associated with the five PayPal accounts—www.borntradejersey.com and www.borntradejerseys.com—the only products offered for sale are what appear to be trademarked sports team apparel for which the websites are not licensed sellers or distributors.

### Many Purchasers Use More than One of the Five PayPal Accounts

124.    A review of the records of the five PayPal accounts shows that a large number of the purchasers making payments to one of the PayPal accounts also had made payments to one or more of the other PayPal accounts in a separate transaction.

125.    There were 5,241 unique customers listing a United States shipping address who made at least one payment to one of the five PayPal accounts.

126.    Of the 5,241 unique customers, 438 customers (8.36%) made payments to at least two of the five PayPal accounts.  Those 438 customers accounted for 1,375 of the 6,439 completed transactions that listed a United States shipping address, or 21.35% of all of the completed transactions associated with United States shipping addresses recorded in the five PayPal accounts.

127.    Additionally, of the 438 customers who made payments into at least two of the five PayPal accounts, 90 made payments into at least three of the five PayPal accounts, 23 paid into at least four of the five PayPal accounts, and two customers made payments to all five PayPal accounts.

### Proceeds of the Sales of Counterfeit Sports Apparel
### Processed Through the Five PayPal Accounts

128.    The 937 completed transactions made to the magicwen9999@gmail.com PayPal account between December 7, 2010 and November 3, 2011 totaled $226,278.64.  The 923 completed payments made by purchasers listing a United States shipping address totaled $222,442.01 after subtracting PayPal's fees.

129.    Upon information and belief, the $226,278.64 in funds paid into the magicwen9999@gmail.com PayPal account is the proceeds of the sale of counterfeit jerseys processed through the magicwen9999@gmail.com PayPal account.  Upon information and belief, the $222,442.01 in funds paid into the magicwen9999@gmail.com PayPal account is the proceeds

of the sale of counterfeit jerseys processed through the magicwen9999@gmail.com PayPal account and shipped to addresses in the United States.

130.    The 1,983 completed transactions made to the davidlu199@gmail.com PayPal account between December 19, 2010 and November 29, 2011 totaled $408,237.80.  The 1,936 completed payments made by purchasers listing a United States shipping address totaled $397,003.12 after subtracting PayPal's fees.

131.    Upon information and belief, the $408,237.80 in funds paid into the davidlu199@gmail.com PayPal account is the proceeds of the sale of counterfeit jerseys processed through the davidlu199@gmail.com PayPal account.  Upon information and belief, the $397,003.12 in funds paid into the davidlu199@gmail.com PayPal account is the proceeds of the sale of counterfeit jerseys processed through the davidlu199@gmail.com PayPal account and shipped to addresses in the United States.

132.    The 1,431 completed transactions made to the yhsong005@gmail.com PayPal account between November 30, 2010 and November 23, 2011 totaled $464,982.04.  The 1,415 completed payments made by purchasers listing a United States shipping address totaled $460,582.40 after subtracting PayPal's fees.

133.    Upon information and belief, the $464,982.04 in funds paid into the yhsong005@gmail.com PayPal account is the proceeds of the sale of counterfeit jerseys processed through the yhsong005@gmail.com PayPal account.  Upon information and belief, the $460,582.40 in funds paid into the yhsong005@gmail.com PayPal account is the proceeds of the sale of counterfeit jerseys processed through the yhsong005@gmail.com PayPal account and shipped to addresses in the United States.

134.    The 1,029 completed transactions made to the lansong10@gmail.com PayPal account between December 7, 2010 and November 15, 2011 totaled $254,639.03.  The 1,018 completed payments made by purchasers listing a United States shipping address totaled $250,729.73 after subtracting PayPal's fees.

135.    Upon information and belief, the $254,639.03 in funds paid into the lansong10@gmail.com PayPal account is the proceeds of the sale of counterfeit jerseys processed through the lansong10@gmail.com PayPal account.  Upon information and belief, the $250,729.73 in funds paid into the lansong10@gmail.com PayPal account is the proceeds of the sale of counterfeit jerseys processed through the lansong10@gmail.com PayPal account and shipped to addresses in the United States.

136.    The 1,161 completed transactions made to the zf3233@hotmail.com PayPal account between November 26, 2011 and March 9, 2012 totaled $208,237.80.  The 1,147 completed payments made by purchasers listing a United States shipping address totaled $199,459.38 after subtracting PayPal's fees.

137.    Upon information and belief, the $208,237.80 in funds paid into the zf3233@hotmail.com PayPal account is the proceeds of the sale of counterfeit jerseys processed through the zf3233@hotmail.com.  PayPal account.  Upon information and belief, the $199,459.38 in funds paid into the zf3233@hotmail.com PayPal account is the proceeds of the sale of counterfeit jerseys processed through the zf3233@hotmail.com PayPal account and shipped to addresses in the United States.

138.     The following chart summarizes the completed payments made to the five PayPal accounts during the periods for which they were active.  The payments reflect only completed payments that listed United States shipping addresses.

| PayPal Account | Completed Transactions (with U.S. shipping address) | Proceeds from Completed Transactions (with U.S. shipping address) |
|---|---|---|
| magicwen9999@gmail.com | 923 | $222,442.01 |
| davidlu199@gmail.com | 1,936 | $397,003.12 |
| yhsong005@gmail.com | 1,415 | $460,582.40 |
| lansong10@gmail.com | 1,018 | $250,729.73 |
| zf3233@hotmail.com | 1,147 | $199,459.38 |
| *Total* | *6,439* | *$1,530,216.64* |

139.     The 6,439 completed payments associated with United States shipping addresses and made to the five PayPal accounts between November 30, 2010 and March 9, 2012 totaled $1,530,216.64.

**Transfer of Proceeds from the Five PayPal Accounts to Financial Institutions in China**

140.     Between on or about December 14, 2010, and on or about March 6, 2012, there were 70 completed outgoing wire transfers from the five PayPal accounts to accounts at Bank of China Limited, Guangdong Branch, in a total amount of $1,538,549.27, exclusive of transaction fees.

141.     Upon information and belief, the $1,538,549.27 in funds wired from the five PayPal accounts constitutes or is derived, directly or indirectly, from the proceeds of sales of counterfeit sports apparel.

142.    Upon information and belief, of the $1,538,549.27 in funds wired from the five PayPal accounts, $1,455,438.72 constitutes or is derived, directly or indirectly, from the proceeds of counterfeit sports apparel shipped to the United States.  The $1,455,438.72 in wired funds (from counterfeit sales to the United States) is less than the $1,530,216.64 total of payments into those five PayPal accounts (from counterfeit sales to the United States) because the proceeds of some of those sales remained in the five PayPal accounts at the time the accounts were placed on restricted status by PayPal, freezing funds in the accounts.

143.    Between on or about January 13, 2011 and on or about October 29, 2011, 11  wire transfers totaling $222,615.00 were sent from the magicwen9999@gmail.com PayPal account to account number XXXXXXXXXXXXXXX7-904 at Bank of China Limited, Guangdong Branch.

144.    Upon information and belief, of the $222,615.00 wired to and on deposit with Bank of China Limited, Guangdong Bank, account number XXXXXXXXXXXXXXX7-904, $208,136.18 constitutes or is derived, directly or indirectly, from the proceeds of sales of counterfeit sports apparel sent to United States shipping addresses, including to addresses in the District of Columbia.

145.    Between on or about March 30, 2011, and on or about November 28, 2011, 20  wire transfers totaling $422,300.00 were sent from the davidlu199@gmail.com PayPal account to account number XXXXXXXXXXXXXXX7-831 at Bank of China Limited, Guangdong Branch.

146.    Upon information and belief, of the $422,300.00 wired to and on deposit with Bank of China Limited, Guangdong Bank, account number XXXXXXXXXXXXXXX7-831, $389,735.59 constitutes or is derived, directly or indirectly, from the proceeds of sales of counterfeit sports apparel sent to United States shipping addresses, including to addresses in the District of Columbia.

147.     Between on or about December 14, 2010 and on or about November 21, 2011, 16 wire transfers totaling $456,439.27 were sent from the yhsong005@gmail.com PayPal account to account number XXXXXXXXXXXXXXXX4-460 at Bank of China Limited, Guangdong Branch.

148.     Upon information and belief, of the $456,439.27 wired to and on deposit with Bank of China Limited, Guangdong Bank, account number XXXXXXXXXXXXXXXX4-460, $444,203.53 constitutes or is derived, directly or indirectly, from the proceeds of sales of counterfeit sports apparel sent to United States shipping addresses, including to addresses in the District of Columbia.

149.     Between on or about January 6, 2011 and on or about November 10, 2011, 12  wire transfers totaling $243,580.00 were sent from the lansong10@gmail.com PayPal account to account number XXXXXXXXXXXXXXXX7-858 at Bank of China Limited, Guangdong Branch.

150.     Upon information and belief, of the $243,580.00 wired to and on deposit with Bank of China Limited, Guangdong Bank, account number XXXXXXXXXXXXXXXX7-858, $227,110.57 constitutes or is derived, directly or indirectly, from the proceeds of sales of counterfeit sports apparel sent to United States shipping addresses, including to addresses in the District of Columbia.

151.     Between on or about December 28, 2011, and on or about March 6, 2012, 11  wire transfers totaling $193,615.00 were sent from the zf3233@hotmail.com PayPal account to account number XXXXXXXXXXXXXXXX5-687 at Bank of China Limited, Guangdong Branch.

152.     Upon information and belief, of the $193,615.00 wired to and on deposit with Bank of China Limited, Guangdong Bank, account number XXXXXXXXXXXXXXXX5-687, $186,252.72 constitutes or is derived, directly or indirectly, from the proceeds of sales of counterfeit sports apparel sent to United States shipping addresses, including to addresses in the District of Columbia.

153.    Bank of China Limited, Guangdong Branch, maintains an interbank or other correspondent account, account number 7001-1000012-000-001, at the New York branch of Bank of China Limited, which is located at 410 Madison Avenue, New York, NY 10017.  Bank of China Limited, Guangdong Branch, also maintains interbank accounts at the New York branches of Bank of America NA (account number 6550690130), Citibank NA (account number 36004441), Deutsche Bank Trust Company Americas (account number 04-036-203), and JPMorgan Chase Bank National Association (account number 001-1-165206).

## The Continued Sale of Counterfeit Sports Apparel
## on the Websites www.borntradejersey.com and www.borntradejerseys.com

154.    After PayPal restricted the five PayPal accounts, the websites www.borntradejersey.com and www.borntradejerseys.com continued to sell counterfeit sports apparel.

155.    After PayPal restricted the zf3233@hotmail.com PayPal account, the account holder refunded or reversed the charges of recent payments into the account.

156.    One customer who had placed an order for sports apparel on www.borntradejersey.com and received a refund for a payment made to the zf3233@hotmail.com PayPal account received an email from service.born@gmail.com.  The email stated, in part:

> sorry for the disturbance, maybe you receive your parcels ,if not, you will get them soon. for now, we met a big problem and need your help.  are our payment account occured some problem and returned back the money back to you.  and the pa[y]pal is not work for now.  now we stop to use paypal.  really a big loss for us.
>
> we hope you can help to resent the money back to us by West Union or moneygram. if use the west union or moneygram, we will offer 10% discount. . . . [*sic*]

The email provided the information for sending payment by Western Union or MoneyGram to a Tao Chen in Guangzhou, China.

157.    The information regarding payment methods on the www.borntradejersey.com and www.borntradejerseys.com website no longer lists PayPal as an available payment method.  Instead, the websites list credit card payment, Western Union, or MoneyGram as available payment methods.

158.    Upon information and belief, those selling counterfeit sports apparel on www.borntradejersey.com and www.borntradejerseys.com have stopped using PayPal to process payments for goods sold on their websites because of the risk that PayPal will restrict the accounts, preventing access to the funds in the accounts.  Wire transfers and direct credit card payments, by contrast, do not hold funds in the same way as PayPal, thereby mitigating the risk of losing funds or having to refund funds and seek repayment via another method after the merchandise has already been shipped.

## Seizures by Customs and Border Patrol
## of Shipments of Counterfeit Jerseys Sent by Borntrade

159.    On or about April 21, 2011, Customs and Border Patrol ("CBP") in Philadelphia, Pennsylvania, intercepted three shipments at DHL's Philadelphia hub that were sent from "Borntrade."  DHL is an international logistics company, a subdivision of which is the international express mail service company DHL Express.

160.    The three shipments originated in Mainland China and, collectively, contained 45 professional sports jerseys, all of which a CBP Import Specialist determined were bearing counterfeit trademarks.

161.    The boxes containing the three shipments included one which bore the stamp "www.borntrade.net" and two which bore the stamp "Borntrade."

162.    A CBP import specialist who was trained by CAPS examined the jerseys and determined that they were counterfeit.

163.     In or about May 2011, the three shipments were seized by CBP pursuant to Title 19, United States Code, Section 1526(e).  Section 1526 prohibits the importation of "any merchandise of foreign manufacture if such merchandise, or the label, sign, print, package, wrapper, or receptacle, bears a trademark owned by a citizen of, or by a corporation or association created or organized within, the United States, and registered in the Patent and Trademark Office by a person domiciled in the United States."

164.     The websites www.borntradejersey.com and www.borntradejerseys.com both state that DHL is one form of shipping used to mail orders internationally.

165.     Upon information and belief, the counterfeit jerseys detained and seized by CBP in Philadelphia were ordered from www.borntradejersey.com or www.borntradejerseys.com.

## COUNT I

1.     All statements and averments made in paragraphs 1–165 are re-alleged and incorporated, herein, by reference.

2.     The defendant properties are subject to forfeiture because they constitute or are derived from "any proceeds obtained directly or indirectly" as a result of the commission of the offense of trafficking in counterfeit goods, in violation of Title 18, United States Code, Section 2320(a)(1).

3.     As such, the defendant properties are subject to forfeiture pursuant to Title 18, United States Code, Section 2323(a)(1)(C).

**WHEREFORE**, the plaintiff United States of America prays that, as to the defendant properties, **All Funds In Bank Of China Limited, Guangdong Branch, Interbank Accounts In The United States In An Amount Up To And Including The Amount Of $208,136.18, Which**

**Is Equivalent To The Value Of Proceeds Now On Deposit In Account Number XXXXXXXXXXXXXXXX7-904, Held At Bank Of China, Guangdong Branch, Or Any Property Traceable Thereto; All Funds In Bank Of China Limited, Guangdong Branch, Interbank Accounts In The United States In An Amount Up To And Including The Amount Of $389,735.59, Which Is Equivalent To The Value Of Proceeds Now On Deposit In Account Number XXXXXXXXXXXXXXXX7-831, Held At Bank Of China, Guangdong Branch, Or Any Property Traceable Thereto; All Funds In Bank Of China Limited, Guangdong Branch, Interbank Accounts In The United States In An Amount Up To And Including The Amount Of $444,203.53, Which Is Equivalent To The Value Of Proceeds Now On Deposit In Account Number XXXXXXXXXXXXXXXX4-460, Held At Bank Of China, Guangdong Branch, Or Any Property Traceable Thereto; All Funds In Bank Of China Limited, Guangdong Branch, Interbank Accounts In The United States In An Amount Up To And Including The Amount Of $227,110.57, Which Is Equivalent To The Value Of Proceeds Now On Deposit In Account Number XXXXXXXXXXXXXXXX7-858, Held At Bank Of China, Guangdong Branch, Or Any Property Traceable Thereto; and All Funds In Bank Of China Limited, Guangdong Branch, Interbank Accounts In The United States In An Amount Up To And Including The Amount Of $186,252.85, Which Is Equivalent To The Value Of Proceeds Now On Deposit In Account Number XXXXXXXXXXXXXXXX5-687, Held At Bank Of China, Guangdong Branch, Or Any Property Traceable Thereto**, due process and warrants of arrest *in rem* issue according to law; that, pursuant to law, notice be provided to all interested parties to appear and show cause why the forfeiture should not be decreed and the defendant properties be condemned as forfeited to the

United States of America; and for such other and further relief as this Court may deem just,

necessary and proper, together with the costs and disbursements of this action.

Respectfully submitted,

_/s/_____

RONALD C. MACHEN JR., D.C. Bar No. 447889
United States Attorney

_/s/_____

STEPHANIE LAUREN BROOKER, D.C. Bar No. 475321
Chief, Asset Forfeiture and Money Laundering Section
DIANE G. LUCAS, D.C. Bar No. 443610
Assistant United States Attorney
Asset Forfeiture and Money Laundering Section
JONATHAN P. HOOKS, D.C. Bar No. 468570
Assistant United States Attorney
Fraud and Public Corruption Section
KATHARINE A. WAGNER, N.Y. Bar No. 4798245
Special Assistant United States Attorney
Asset Forfeiture and Money Laundering Section
555 Fourth Street, N.W., Fourth Floor
Washington, D.C. 20530
(202) 252-7724
Diane.Lucas@USDoj.Gov

_/s/_____

JENNIFER SHASKY CALVERY
Chief, Asset Forfeiture and Money Laundering Section
FREDERICK REYNOLDS
Deputy Chief
PAMELA J. HICKS
Senior Trial Attorney
Asset Forfeiture and Money Laundering Section
Criminal Division, U.S. Department of Justice
1400 New York Avenue, N.W.
Washington, D.C. 20530
(202) 514-1263
Pamela.Hicks@USDoj.Gov

_/s/_____

THOMAS S. DOUGHERTY
Trial Attorney

-40-

Computer Crime and Intellectual Property Section
Criminal Division, U.S. Department of Justice
1301 New York Avenue, N.W.
Washington, D.C. 20530
(202) 514-1026
Thomas.Dougherty@USDoj.Gov


Counsel for Plaintiff United States

## **VERIFICATION**

I, Satish Mathai, a Special Agent for the United States Immigration and Customs Enforcement, hereby verify and declare under penalty of perjury that I have read the foregoing Verified Complaint *in rem* and know the contents thereof, and that the matters contained in the Verified Complaint are true to my own knowledge, except those matters herein stated to be alleged on information and belief and as to those matters I believe them to be true.

The sources of my knowledge and information and the grounds of my belief are the official files and records of the United States, information supplied to me by other law enforcement officers, as well as my investigation of this case, together with others, as a Special Agent of the United States Immigration and Customs Enforcement.

I hereby verify and declare under penalty of perjury under the laws of the United States of America, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct.

Executed on this 24th day of April 2012.


_/s/ Satish Mathai_____
Satish Mathai
Special Agent
Immigration and Customs Enforcement